C. W. SUTTON *et al.,* Appellees, v. PATRICK KELLIHER, Appellant.   Or as it should be docketed, PATRICK KELLIHER, Appellant, v. C. W. SUTTON, *et al.,* Appellees.

**Fraudulent Conveyances:** ACTUAL FRAUD:  *Consideration.*  A mortgage is invalid if executed with intent to hinder and defraud creditors, though based on valuable consideration.

EVIDENCE.   Evidence of the fraudulent use of a mortgage by the mortgagee and third persons after its execution is admissible in a suit by the creditors of the mortgagor, to set the mortgage aside as being fraudulent in its inception, for the purpose of showing that its execution was in fraud of creditors, but not for the purpose of showing fraudulent use as an independent fact, as the creditors were not injured by the latter act.

*Same.*   Evidence of other facts of a similar character, occurring about the same time as the execution of a mortgage, is admissible, as showing intent, in an action to set the mortgage aside as being in fraud of creditors.

CONVEYANCE TO PARTNERSHIP: *Lien.* A partnership to whom real estate is conveyed is presumed to have at least an equitable title thereto, which, being subject to a lien of a judgment against the partnership, renders it immaterial, in an action to set aside a mortgage thereon by the partnership as being in fraud of creditors, to determine whether the conveyance passed the legal or only the equitable title to the property.

*Same.* A mortgagee of real estate, the title to which is in a partnership which executed the mortgage, cannot defeat the claims of judgment creditors of the partnership who claim the mortgage to be in fraud of their rights, by showing that the mortgaged property is the individual property of one of the partners, when the judgment is against the partners individually as well as the partnership.

TRUST TITLE NO DEFENSE. A mortgagee of real estate in a foreclosure suit cannot defeat the claims of creditors of the mortgagor, who alleges that the mortgage is in fraud of their rights, by showing that the mortgagor held the property in trust for another.

*Appeal from Sac District Court.—* HON. S. M. ELWOOD, Judge.

SATURDAY, FEBRUARY 8, 1902.

SUIT in equity to foreclose a mortgage executed by defendants Sutton to James Taylor to secure the payment of two notes aggregating over $1,700. Plaintiff, Kelliher, obtained the notes and mortgage from Taylor after maturity, and he makes the Suttons and numerous of their judgment creditors parties defendant. One of these creditors, to wit, Fuller & Johnson Manufacturing Company, appeared and answered, denying the validity of the mortgage, and filed a cross bill against Kelliher, in which it asked that the mortgage be declared fraudulent and void, that its lien be held superior thereto, and for general relief. Plaintiff joined issue on the allegations of the cross bill, and it was agreed that these pleadings should be treated as settling the issues between plaintiff and the other judgment creditors who were made defendants, and that all parties should be bound

by the decree rendered therein. On these issues the case
was tried to the court, resulting in a decree finding that the
liens of the judgment creditors were prior and superior to
the lien of plaintiff's mortgage. Plaintiff appeals.—*Affirmed.*

C. D. *Goldsmith* and *William Sheller* for appellant.

W. A. *Helsell* for appellees.

DEEMER, J.—For many years prior to the time this
controversy arose C. W. Sutton and Geo. W. Sutton were
engaged in merchandising at Odebolt, Iowa, under the firm
name of C. W. Sutton & Son. The title to lots 9, 10, and
11 in block 4 in said town appeared to be as follows: Lot
9 stood in the name of C. W. Sutton, lot 10 in the name of
G. W. Sutton, and lot 11 in the name of C. W. Sutton &
Son. On November 19, 1896, G. W. Sutton conveyed lot
10, upon which there was a brick store building, to Lucinda
Sutton, wife of C. W.; and on the same day C. W. Sutton
& Son transferred their stock of merchandise to John Mc-
Corkindale; and at about the same time C. W. Sutton and
wife made the mortgage in controversy to Taylor, which
covered lot 9 and " C. W. Sutton's interest in lot 11." This
controversy is over lot 11 in block 4. The creditors claim
that the mortgage to Taylor was executed without considera-
tion, and with the specific intent to cheat and defraud the
creditors of C. W. Sutton & Son,— C. W. and Geo. W.
Sutton. It appears that they were all creditors at the time
the mortgage was executed to Taylor, and that they have
since reduced their claim to judgment. It is also claimed
that, as the mortgage only covered C. W. Sutton's inter-
est in the property, and as the creditors are the creditors
of a partnership of C. W. Sutton & Son, their liens are prior
to that created by the mortgage. Sutton and Taylor claim
that the mortgage was executed to secure Taylor for money

received by Sutton as the guardian of Taylor; that, although the title to lot 11 was in C. W. and Geo. W. Sutton as "C. W. Sutton & Son," yet in truth C. W. Sutton was the sole owner thereof, and possessed the entire interest therein; and that the money secured by C. W. Sutton as guardian of Taylor was used by the firm of C. W. Sutton & Son in the transaction of partnership business. They deny any fraud in the making of the mortgage, and say it was executed in good faith, to secure Taylor the money owing him. Plaintiff acquired possession of the mortgage in this manner: McCorkindale, who it is claimed purchased the partnership stock of merchandise, it is said sold the same, after holding it a short time, to Taylor, receiving the notes and mortgage in suit in payment thereof. Sutton and wife had given a bond to plaintiff, Kelliher, to convey him the lot in controversy, and it became evident to all that they could not make good title to the lot because of the outstanding mortgage, and for the further reason that some of the creditors of the firm had obtained judgments which were apparent liens. It is claimed that he (Kelliher) wanted the property, and that, after discovering the apparent liens, he went to McCorkindale, and purchased the note and mortgage, paying $25 in cash, and promising him more if he succeeded in obtaining title to the property through foreclosure proceedings. All this was after the maturity of the notes, and, even if it were not, plaintiff has not shown himself to be a purchaser for value. The primary question in the case is the validity of the Taylor notes and mortgage as against prior creditors of the firm of C. W. Sutton & Son who have reduced their claims to judgment not only as against the firm, but also as against the individual members thereof. If this mortgage was executed with intent to hinder, delay, and defraud these creditors, it is invalid, even if based on a valuable consideration. Evidence as to the fraudulent use of the mortgage by the payee

and others after its execution is not material, except in so far as it bears on the issue of fraud at the inception of the transaction. These defendants may not complain of any fraud between Taylor and McCorkindale, or of McCorkindale and plaintiff, unless they were in some manner prejudiced thereby. Consequently, if the mortgage was valid when executed, the creditors' liens are subject thereto. But the issue of fraud opens a very wide door, and subsequent conduct may be shown for the purpose of establishing the affirmative of that issue. Another rule of almost universal application is that other acts of a similar character, transpiring about the time of the act in question, may be shown for the purpose of establishing intent, and this is especially true where the indications are that they are a part of a connected scheme to defraud. *Clarke v. White,* 12 Pet. 193, (9 L. Ed. 1046); *Starr v. Stevenson,* 91 Iowa, 684; *Hamilton Buggy Co. v. Iowa Buggy Co.,* 88 Iowa, 364. Other familiar rules as to the right of an insolvent to prefer creditors, and as to priorities of partnership over individual creditors in firm property, need not be stated, as they are too familiar to need repetition.

From a reading of this record we are entirely satisfied that Sutton & Son made all the transfers to which we have referred with intent to hinder, delay, or defraud their creditors. Our custom is not to set out the testimony on which we base our conclusions, and there is no reason for departing from it in this particular case. We are also constrained to believe that McCorkindale and Lucinda Sutton participated in this fraud. But for the evidence regarding Taylor's subsequent conduct, we would hesitate before finding fraud on his part. But his transactions with McCorkindale in reference to the stock of merchandise are such as to indicate very clearly that he did not take the mortgage in good faith. His subsequent conduct is strong evidence of a prior intent, and his testimony, added to that relating

to the main transaction, is such as to lead to the conclusion that the notes and mortgage in suit were executed as a part of a general plan to cheat and defraud; and that Taylor not only had notice thereof, but participated therein. These subsequent acts give tone to the original purpose. We need not again recite them, or give them their proper color. It is enough to add a few further facts, which are confirmation strong of our conclusions. After Taylor received the stock of goods from McCorkindale, he (Taylor), without any consideration therefor, transferred the same to Mrs. C. W. Sutton. During all the time the title was in McCorkindale, Taylor, and Mrs. C. W. Sutton, the Suttons were in possession of the stock of goods, and sold from it and other property as they saw fit. Taylor and Sutton both admit that Taylor traded his notes and mortgage for the stock at the instance and on the suggestion of C. W. Sutton. Some of the notes said to have been given by McCorkindale for the merchandise were surrendered to him within a week after the transfer was made. Sutton, it seems, retained the Taylor notes and mortgage in his possession until they were given to McCorkindale in exchange, as is claimed, for the stock of merchandise. Taylor is a brother-in-law of C. W. Sutton, and it seems acted largely on his (Sutton's) advice.

Our conclusion that the notes and mortgages were fraudulent as to creditors renders it unnecessary to consider the other matters discussed. It may be that the conveyance of the lot to C. W. Sutton & Son did not pass the legal title, but only an equitable one, as held in *German Land Assn. v. Scholler,* 10 Minn. 331 (Gil. 260); *Gille v. Hunt,* 35 Minn. 357, (29 N. W. Rep. 2); *Rammelsberg v. Mitchell,* 29 Ohio St. 22; or that it conveyed title to C. W. Sutton alone as held in *Lyman v. Gedney,* 114 Ill. 388 (29 N. E. Rep. 282, 55 Am. Rep. 871), and *Beaman v. Whitney,* 20 Me. 413. But these points we do not decide, for they are not argued by counsel. It is enough to say that under either rule, as we understand it, the part-

ners, when the conveyance is to a partnership, have presumptively at least, an equitable-title; and in this state judgments are liens upon equitable titles. See cases cited under section 3801 of the Code. Testimony was adduced upon the trial to show that C. W. Sutton was in fact the sole owner of the property, or, if not the sole owner, that he held the legal title thereto in trust for Taylor, who, it is claimed, furnished the consideration paid for the land. Even if the latter testimony be accepted as truth, it will not avail plaintiff, for he is claiming under a mortgage, and not asking to establish a trust; and, conceding that the former testimony is competent, and that it establishes title in C. W. Sutton alone, yet the plaintiff neither tenders such an issue in his pleadings nor presents it in his argument, except in the most obscure manner. Had the points all been properly made and presented, they would not avail, for the judgments held by defendants were not only against the firm, but also against C. W. and Geo. W. Sutton individually. Consequently they were liens on the lot, whether the title was in C. W. Suton or the firm of which he was a member. Both of the Suttons were insolvent when defendants obtained their judgments, and they remained so when this action was commenced. Reduced to its last analysis, the only point in the case is the character of the mortgage. Was it made with intent to hinder, delay, and defraud the creditors of C. W. Sutton & Son,—C. W. and Geo. W. Sutton? If so, the decree is correct, and, if not, it should be reversed.

We think the evidence clearly establishes fraud, and the judgment is therefore AFFIRMED.