MASONIC BUILDING CORPORATION, APPELLEE, V. CARL C. CARLSEN ET AL., APPELLANTS.

FILED DECEMBER 21, 1934. No. 28912.

*Frank A. Peterson* and *Perry, Van Pelt & Marti*, for appellants.

*Maxwell V. Beghtol, Glen H. Foe* and *J. Lee Rankin*, contra.

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ., and Messmore, District Judge.

Messmore, District Judge.

This is an appeal from the district court for Lancaster county, wherein plaintiff received a verdict and judgment from defendants in the sum of $10,886.62. For the purposes of this opinion the appellants, who were defendants below, will be called defendants, and appellee, who was plaintiff below, will be called plaintiff.

Plaintiff's petition alleges its corporate capacity and that the Lincoln Trust Company was organized as a trust company, transacting its business in Lincoln, Nebraska, and the Lincoln Safe Deposit Company was authorized to own and hold real estate; that the Lincoln Trust Company was conducted and controlled by a board of directors, an

executive committee, a loan committee and various officers, which officers included a president, vice-president and trust officer. The petition further sets forth the duties and functions of the committees and officers of said trust company. Further, that the defendant Carl C. Carlsen was president, director and member of the executive committee and loan committee of said Lincoln Trust Company; that defendant John A. Reichenbach was vice-president, director and member of said committees of said company; that defendant Paul H. Holm was director and member of said committees of said company; that defendant William R. Mellor was trust officer, director and member of said committees of said company.

Said petition alleges further that it was the duty of all the defendants, by virtue of their respective offices in said Lincoln Trust Company, to deal honestly and fairly with persons having relations with said company and with the trusts and property entrusted to the same; to diligently protect the interests of persons who were the beneficiaries of trusts placed in charge of said company as trustee; to abstain from personally profiting or attempting to personally profit from the trusts reposed in said company or to permit others under their direction and control so to do with their knowledge.

Further, that the Lincoln Trust Company and the Lincoln Safe Deposit Company were adjudicated bankrupts on the 9th day of July, 1932, by the United States court for the district of Nebraska, Lincoln division; that on or about January 7, 1928, plaintiff and the Lincoln Trust Company entered into a written agreement providing for reposing in said company by plaintiff of certain trusts; that on the 12th day of December, 1928, said Lincoln Trust Company had in its possession and under its control the sum of $10,000 belonging to plaintiff, together with other amounts resulting from the part performance of said trust agreement; that on said date of December 12, 1928, and shortly prior thereto said company with the fraudulent aid and assistance of the defendants adopted and carried into

execution a fraudulent device for the purpose and with the result of fraudulently converting to the use of said trust company of said trust funds as follows: That at all times subsequent to the early part of 1926 the Lincoln Safe Deposit Company was the owner of certain lands in Holt county, Nebraska, consisting of approximately 640 acres, as more fully described in the petition; that on or about the 5th day of December, 1928, the defendants caused the Lincoln Safe Deposit Company to fraudulently place the legal title to said land in the name of one Harvey R. Given, and thereupon, as a part of the same transaction, said defendants further caused the said Harvey R. Given and Edith N. Given, purporting to be his wife, to execute and deliver to said Lincoln Safe Deposit Company a series of instruments called "real estate first mortgage bonds," purporting to be notes of the said Harvey R. and Edith N. Given, dated December 5, 1928, and due December 5, 1933, and secured by a mortgage on said 640 acres of land in Holt county owned by said Lincoln Safe Deposit Company; that contemporaneous with the execution of said notes and mortgage by the said Givens the defendants caused the said Givens to execute and deliver to the Lincoln Safe Deposit Company a deed to said land, so that by the fraudulent manipulation of said title the same was legally vested in the said Givens only for a sufficient period of time for said parties to execute said notes and mortgage; that said manipulation was for the fraudulent purpose of providing instruments and documents which on their faces would present the appearance of constituting *bona fide* obligations of indebtedness, when, in truth and in fact, the defendants and all of them knew that said instruments were not *bona fide*, constituted no obligation on the part of the Givens to pay money, were not secured as represented in said papers, and were not securities approved by law as trust investments, and were of no value whatever; that notwithstanding said facts the defendants on the 12th day of December, 1928, withdrew from the money of plaintiff the

sum of $10,000 and pretended to invest the same in said Given notes and mortgage; that said conduct on the part of the Lincoln Trust Company was fraudulent and contrary to its duty as trustee of the property and money of plaintiff, and its conduct in that regard was controlled, directed and aided by the defendants and each of them; that plaintiff did not discover the fraudulent dealings of the defendants with its property until about December 1, 1932, and enters its prayer for judgment for the sum of $10,000 and interest.

The answer of defendant John A. Reichenbach admits that the Lincoln Trust Company and the Lincoln Safe Deposit Company were Nebraska corporations and that said companies were adjudicated bankrupts on July 9, 1932, and admits that he was a member of the board of directors, of the executive committee, of the loan committee and an inactive vice-president of the Lincoln Trust Company.

The answer further alleges that the agreement between plaintiff and the Lincoln Trust Company provided for the investment of the endowment fund by the trustee and the acceptance of the trust under the trust agreement with plaintiff, "with the express reservation that no personal liability shall attach to the trustee under this instrument or in the performance hereunder except for its misappropriation of funds herein or its failure to account for the same or to use ordinary care in performing its duties hereunder," and enters a denial of all the allegations of plaintiff's petition not admitted.

Alleges further that said defendant at no time was the managing officer of the Lincoln Trust Company or the Lincoln Safe Deposit Company and at no time had anything to do with the trust funds or the sale of securities; that he at all times mentioned in his answer was a resident of the city of Lincoln, Nebraska; that it was no part of his duties as a member of said loan committee of the Lincoln Trust Company to personally inspect or appraise farm lands; that the managing officers of said company

employed experienced and skilful examiners to appraise farm land for the purpose of making loans thereon, and did employ such an experienced and skilful examiner to examine, appraise and report on the land described in plaintiff's petition, detailing in his answer the kind of examination made by said examiner, upon which he relied, and sets forth the value of the appraisals made on the lands, and that the renewal loan, of which defendant approved, on said land in the sum of $10,000 was less than 40 per cent. of the appraised value of said real estate; that defendant was unaware that any person other than applicant for said loan had any interest in said property; was unaware that said bonds were to be sold to plaintiff or for other trust purposes; that the principal note and coupons, the mortgage, the opinion as to title and all the other legal matters incident to the completion of said loan were entrusted to competent attorneys employed by the managing officers of said Lincoln Trust Company; that said attorneys were learned and skilled in such matters and that defendant's approval of said loan was on the express condition that before said securities were offered for sale such counsel should approve thereof and furnish said trust company an opinion that said bonds had been found and determined by such attorneys to be a first and valid lien upon said real estate; that this defendant at all times used more than ordinary care in performing his duties as a member of the loan committee of said trust company and in attempting to protect investors; that at the time this answering defendant gave his approval to said loan he relied upon the report and appraisal of said examiner, believing that the security was adequate for a loan of $10,000, and in all things acted in good faith and according to his best judgment.

Further alleges that plaintiff did not rely upon the approval of said loan by this defendant or any other member of said loan committee, but that plaintiff selected an experienced committee which knew, or should have known, the value of said property in that vicinity, and

that said committee selected a skilled and experienced examiner and accountant to examine the application, the principal note, the coupons, the mortgage and the abstract and all other papers and records in connection with said loan; that said examiner and accountant were by said trustee given access to all the papers and records in connection with said loan and examined the same at least once every six months and had the power to change the form of said investment or substitute other securities therefor; that at the time said loan was approved said property had a value of $15,000 in excess of the amount of said loan; that the failure of plaintiff (when the panic of October, 1929, depreciated all values) to change the form of said investment and to require other securities to be substituted therefor was not due to any act of this defendant; that plaintiff now has a valid and subsisting first lien on said property which it refuses to release or surrender.

The answer of defendant Paul H. Holm is in substance the same as that of defendant Reichenbach, alleging he was a member of the board of directors, of the executive committee and of the loan committee of the Lincoln Trust Company.

The answer of defendant William R. Mellor is in substance the same as those of defendants Reichenbach and Holm, alleging that he was a member of the board of directors, of the executive and loan committees and at one time was one of the trust officers of the Lincoln Trust Company.

The answer of defendant Carl C. Carlsen is practically the same as those of the other defendants; that during the times mentioned in plaintiff's petition he was president, director and member of the executive and loan committees of the Lincoln Trust Company.

To the separate answers of defendants plaintiff filed its reply, denying each and every allegation in said answers contained except such as are admissions of the allegations of plaintiff's petition. For further reply it denies that

defendants severally used more than ordinary care in performing their duties in respect to the transactions complained of, and alleges that their negligent failure in this regard was as follows: "In that although defendants, and each of them, had actual knowledge on or before the 1st day of July, 1928, that the president of said company was engaged in conduct relative to the business of said Lincoln Trust Company not according to good business principles nor fair business conduct, and although said defendants had been requested by other members of the board of directors of the Lincoln Trust Company not to entrust business transactions to the president of said company, yet, nevertheless, the defendants and each of them negligently permitted said president to continue in a position of trust therein and thereafter failed to use care and diligence in respect to the said officer's conduct. And also said defendants failed to use ordinary care in that although they knew, or, in the exercise of ordinary care, should have known, all the facts and circumstances surrounding the fraudulent transaction resulting in the investment of plaintiff's money in a fraudulent and worthless note, the said defendants, and each of them, negligently failed to exercise their powers to prevent the fraud upon this plaintiff."

When the jury was being selected to try this case the lower court limited the defendants to three peremptory challenges. The defendants insist that each of them had a right to three peremptory challenges in his own defense, but the trial court over objections of defendants on this point held that the answers of the various defendants did not raise adverse claims as between themselves and they were therefore limited to three peremptory challenges, collectively, and were allowed three such challenges, collectively. From a careful reading of the answers filed by each defendant and the similarity of the same as to their defenses, we believe that the trial court was correct in its ruling. *Petsch & McDonald v. Hines,* 110 Neb. 1.

Defendants further contend that a defendant cannot be

required to defend when plaintiff's reply constitutes a new cause of action. They severally filed a motion to strike paragraph 2 of the reply for the reason that it constituted a departure from the cause of action pleaded in the petition, was an attempt to plead a new and different cause of action, an attempt to amend plaintiff's petition, and an attempt to enlarge the cause of action pleaded in the petition, contending that the new cause of action pleaded in the reply was negligence on the part of defendants and was separate and distinct from the cause of action set out in the petition.

It is claimed by defendants that plaintiff can only recover on the cause of action set out in its petition and that it is not the province of the reply to introduce a new cause of action, citing *Hastings School District v. Caldwell, Hamilton & Co.*, 16 Neb. 68, and other cases of the same holding. If the new matter in the reply is not responsive and defensive to the matter pleaded in the answer, it is a departure therefrom and should upon motion or objection be stricken out. *Hallner v. Union Transfer Co.*, 79 Neb. 215. Section 20-820, Comp. St. 1929, states: "Where the answer contains new matter the plaintiff may reply to such new matter, denying generally or specifically each allegation controverted by him; and he may allege, in ordinary and concise language, and without repetition, any new matter not inconsistent with the petition, constituting a defense to such new matter in the answer." The motion to strike, however, was never ruled on as far as the record discloses.

Plaintiff claims in its petition that the trustee fraudulently breached the trust, resulting in the conversion of $10,000 to the use of such trustee, and that the four defendants were by virtue of their offices in the company in absolute control of its actions; that it was the duty of defendants to deal fairly and honestly with the trustee and to diligently protect the interests of the beneficiaries of the trusts in charge of the trustee.

The defendants in defense to the petition allege that

their conduct in relation to this trust fund was proper and that they employed competent persons to handle the transaction and used more than ordinary care in performing their duties and in attempting to protect investors.

Replying to the answers of defendants, plaintiff denies the use of ordinary care with respect to the transaction involved and specified the manner in which it claims ordinary care was not used by them in relation thereto.

The answers of defendants contain new matter. They not only deny that they were guilty of fraudulent conduct, that they failed to diligently protect investors, that they controlled, aided and directed the breach of trust, but allege they used good faith and more than ordinary care in performing their duties and in their selection of employees to assist them. To these allegations plaintiff had the right under the statute to allege a defense to the new matter, and that defense was a denial that defendants used more than ordinary care and set out the specific allegations in relation thereto. This did not change the cause of action. The case was still the case it always had been, a case claiming the persons in control of the trust not only fraudulently aided and abetted in the breach of the trust, but failed to diligently protect investors and perform their duties in relation to the trust. The reply did not alter or change the cause of action. *Farmers State Bank v. Butler*, 101 Neb. 635.

The evidence discloses that the articles of incorporation of the Lincoln Safe Deposit & Trust Company were filed in the office of the secretary of state on July 13, 1898, and the articles of incorporation of the Lincoln Trust Company were filed in the same office on July 7, 1911; that the two companies had the same general powers, were in the same lines of business and for the same purposes, but operated more pronouncedly through the Lincoln Trust Company; that the latter company owned the stock of the Lincoln Safe Deposit & Trust Company and the officers of the Lincoln Trust Company served as the officers of the Lincoln Safe Deposit & Trust Company; that the Lincoln

Trust Company did a general business of making loans, a general trust business, rented properties and wrote insurance, and in December, 1928, had from 5,000 to 5,500 active loans with 30,000 investors and a number of employees.

The trust agreement between plaintiff and the Lincoln Trust Company, entered into January 7, 1928, provided for the appointment of such trust company as trustee and for the investment by it of the endowment fund of plaintiff and the disposition of interest. Under section D, paragraph X, of the agreement it is provided: "The trustee shall invest the 'endowment fund' as received, in investments to be made in securities approved by law for trust investments."

One further article of the agreement pertinent to this case is the acceptance of the trust by the trustee and the limitation of the trustee's liability, as stated in paragraph XIV thereof, to wit: "The trustee herein named for itself and its successors hereby accepts the trust and assumes the duties herein created and imposed upon it by this trust agreement but with the express reservation that no personal liability shall attach to the trustee under this instrument or in the performance hereunder except for its misappropriation of funds herein or its failure to account for the same or to use ordinary care in performing its duties hereunder."

The articles of incorporation and by-laws of the Lincoln Trust Company were received in evidence, setting forth the respective duties of the board of directors, of the various committees and officers of such corporation.

The trustee in bankruptcy of the Lincoln Trust Company and of the Lincoln Safe Deposit & Trust Company, appointed August 16, 1932, testified that the corporate records of both companies were kept under the name of the Lincoln Trust Company.

The evidence discloses that in 1923 one Hahn owned the 640 acres of land described in plaintiff's petition and that on the 17th day of March, 1923, he gave two mortgages

on the land to the Lincoln Safe Deposit & Trust Company, one for $12,500 and one for $500. Bonds were issued and sold secured by the $12,500 mortgage, and Mr. Hahn paid the interest until the latter part of February, 1926, at which time payments became delinquent. In March, 1926, the Lincoln Safe Deposit & Trust Company took a deed to the farm from Mr. Hahn, and he in turn leased the farm for a period of one year with an option to repurchase on or before March 1, 1927, for the stipulated sum of $14,097.45, with interest, together with sums paid by said company for taxes on said land, upkeep and repairs. Mr. Hahn was unable to exercise this option on account of business losses and sickness and the company retained title to the land. On April 21, 1928, the funds of plaintiff were invested in the Hahn bonds, as shown by exhibit 11, and its account charged with the value thereof. Said exhibit 11 also discloses the payment of the Hahn bonds and the crediting of plaintiff's account with $12,500 on December 12, 1928.

In the fall of 1928 defendant Carl C. Carlsen, president of the Lincoln Trust Company, became acquainted with one Fred D. Mateer in Lincoln, Nebraska, who proposed to trade to the Lincoln Safe Deposit & Trust Company a $30,000 deed of trust on the Castle Apartments in Kansas City, Missouri, owned by him and one Harvey R. Given, for the Holt county land, theretofore deeded by Hahn to the Lincoln Safe Deposit & Trust Company.

The defendants Reichenbach, Holm and Mellor had several conferences with Mateer in Lincoln, and Reichenbach and Mellor went to Kansas City to inspect the property covered by the trust deed which Mateer proposed to trade to the Lincoln Safe Deposit & Trust Company for the Holt county land. Later a contract was entered into between Mateer and the Lincoln Safe Deposit & Trust Company, which Carlsen executed, purporting to have been signed in Lincoln December 4, 1928. After the contract was executed Mateer returned to Kansas City and the deal was completed by correspondence. Under the

terms of this contract the company agreed to sell Mateer three Nebraska farms, including the Hahn farm, taking in exchange the $30,000 deed of trust heretofore mentioned, which also included the furniture and fixtures in the said Castle Apartments, and the company further agreed to loan Mateer $10,000 on the Hahn farm and $5,000 on another Nebraska farm. According to the contract the deed of trust was to be taken in Carlsen's name, which was done; Carlsen then assigning and delivering it to the company. The $30,000 mortgage or deed of trust, according to the testimony of Given, was later paid, Given having borrowed $125,000 on the Castle Apartments, giving the Lincoln Trust Company a mortgage of $10,000 on another building and the balance in cash. The contract further provided that the title to the Nebraska farms was to be taken in Mateer's name. However, Mateer's wife being absent from the city, Mateer called Carlsen by telephone, explaining the absence of his wife and that the deed from the company should be made to Given, and therefore the deed of the Lincoln Safe Deposit Company was made to Given.

The loan of $10,000 to Given was approved by the loan committee for investment of company funds. Given and his wife executed a mortgage to the Lincoln Safe Deposit Company on or about December 5, 1928, together with 20 bonds in denominations of $500 each. These bonds were eventually purchased with the funds of plaintiff. The Given bonds are the bonds declared by plaintiff to be worthless and constitute the subject-matter of its action. Plaintiff later, in 1932, claimed to have discovered the alleged breach of trust by defendants.

It is the contention of defendants that they had nothing to do with determining investments as trust investments, that loans were acted upon by the loan committee before even being considered as trust fund investments, and that the loan committee had nothing to do with approving trust investments. This was an entirely separate transaction, and at each meeting of the executive committee,

which occurred once a month, a list of all trust investments was made in writing and approved or rejected by that committee. The loan committee kept no minutes and the signatures of the members of the loan committee ordinarily appeared on a pink sheet called the approval sheet. Carlsen, the president, would then take the matter up with the loan committee, whose duty it was to pass on the desirability of the loans; Carlsen being the head of the loan department.

The evidence further discloses that from March, 1928, one Schlytern was in charge of the trust department and had the care, custody and control of trust securities. He testified that Reichenbach, Holm and Mellor had nothing to do with saying when funds should be taken from the loan department and placed in trust investments except when called up when they were present at executive committee meetings, that said three named defendants had nothing to do with any of these transactions. The executive committee usually met once a month and at times once a week to pass upon the proposed investment of trust funds and to see that no investment of such trust funds was approved which exceeded 40 per cent. of the appraised value of the security. The unanimous vote of the executive committee was necessary to authorize the investment of trust funds in any security. Minutes were kept by this committee and show the trust investments approved by it and made a part of such minutes.

Evidence of appraisals of the 640 acres of land in Holt county was given, showing that said land was appraised in 1923 by one Garner as having a value of $36,300, by one Sawyer in 1927 as worth $25,600, by one Schilling in 1927 as worth $17,400 and by one Sturdevant in 1928 as having a value of $25,000 to $26,000. Mr. Sawyer testified that the value of the Given bonds on December 12, 1928, was $10,000.

Mateer was a trader in real estate, had no property to speak of, nor much in the way of liquid assets, had been inclined to overextend himself, and credit transactions

with him should be confined to a secure basis. It appeared that Mr. Given was a man of some property and defendants' evidence credited Mateer with having an equity in an apartment house in Chicago of the value of about $500,000.

Defendants assign as error the admission of the testimony of Frank E. Gillen, a witness for plaintiff. Mr. Gillen testified that he was president of the Provident Building & Loan Association of Lincoln and had been for several years, and that he was a director of the Continental State Bank of Lincoln, and that it was his duty in such business to investigate, ascertain and know the values of promissory notes. That as treasurer of plaintiff corporation, upon receiving the notes involved in this action in July, 1932, he made an investigation to ascertain the value of the same, later turning the notes over to a lawyer for further investigation, examined the files of the trust company and talked to defendants Holm and Mellor about the notes. Upon this foundation he was asked a hypothetical question as to the value of the notes on December 12, 1928, and testified that they were worthless.

Defendants' objection to this testimony is to the effect that this witness had never seen the Holt county farm, had no knowledge of its value, was not acquainted with the signers of the bonds or their financial responsibility, and that there was no evidence to go to the jury upon the measure of damages contended for by plaintiff except the evidence of Mr. Gillen, who was not competent to testify.

We believe that the foundation for the testimony of Mr. Gillen was sufficient, and assuming all the facts to be true as put in the hypothetical question, as an expert, he could testify as to the value of the notes in question and the weight of his testimony was for the jury to determine. Such testimony could be received to determine whether or not the usefulness or value of the bonds had been seriously affected, considering all the facts and circumstances surrounding the transaction.

One of the errors assigned by defendant Reichenbach

is that the minutes of the meetings of the directors and stockholders were improperly received in evidence, under the theory that the proper foundation had not been laid, in that L. A. Ricketts testified that he had been appointed trustee in bankruptcy of the Lincoln Trust Company, and without further identification produced certain loose sheets of paper, which were received in evidence as minutes of the meetings. The record discloses that Mr. Ricketts testified that he was trustee in bankruptcy of both the Lincoln Safe Deposit Company and the Lincoln Trust Company, appointed August 16, 1932, and that he had in his custody the minute book of the Lincoln Trust Company, that the minutes were kept in loose leaf binders and each year's business taken out; that the minutes contained in the larger volume were old minutes, which he identified, where they were kept and designated the years. Upon further objection by defendants Reichenbach, Holm and Mellor to the foundation, plaintiff called as a witness Elinor Elder, employed by the Lincoln Trust Company as secretary to the president for more than 10 years prior to the time of the bankruptcy and as assistant secretary of the Lincoln Trust Company, who testified she had seen the minutes before they were produced in court in the files of the company and to her handling of these papers; that the minutes were kept by Mr. Hadley, the company's secretary, were preserved in the vault of the Lincoln Trust Company, and since bankruptcy had been placed in the custody of the trustee in bankruptcy, Mr. Ricketts; that the minutes when produced were in the same condition as when written, and identified the minutes as having been signed by Mr. Hadley, who, according to the by-laws of the Lincoln Trust Company, was to keep a true record of all meetings of the stockholders and board of directors. Under these facts we believe sufficient foundation was laid for the admission of this evidence.

For further objection defendants claim that said minutes were immaterial, incompetent and prejudicial under the following rule: "In the absence of statute, the rule gener-

ally prevailing is that corporation books are not admissible in matters of a private nature to establish or support a right or claim of the corporation or its members against * * * a stockholder, director, or officer in relation to a matter in which the corporation and the stockholder, director, or officer stand as strangers to each other." 22 C. J. 898. Further, that there is no statutory provision for the admission of the records of a private corporation, the records of a private corporation in Nebraska having no more standing than a private writing.

This suit was one claiming that the Lincoln Trust Company, trustee for plaintiff, had breached its trust because the four defendants aided, controlled and directed its conduct and because they did not diligently protect the beneficiaries of the trust, as was their duty. With this in mind the plaintiff must prove, first, the breach of the trust by the Lincoln Trust Company, and, second, that the breach was controlled and directed by the defendants and occasioned by their lack of diligence in protecting the funds. The books of the company were competent to show all the circumstances surrounding the whole transaction, to show who were elected directors of the company, who attended meetings of directors, what was done at the meetings in regard to exposition of the company's affairs, how often the directors met, who were the members of the various committees, and what action they took relative to the company's business and all the circumstances which would tend to show the method by which this trust company transacted its business and who transacted it. "Such records are received in evidence generally to prove corporate acts of a corporation, such as its list of stockholders, its by-laws, the formal proceedings of its board of directors and its financial condition when its solvency comes in question." 10 R. C. L. 1168, sec. 368.

The four defendants constituted those in control of the executive committee, which, under the by-laws of the company, had all the powers of the board of directors and the particular power to employ agents, and that it em-

ployed Hadley and directed him by the by-laws to keep minutes of what they did. *Commissioner of Banks v. Cosmopolitan Trust Co.,* 253 Mass. 205, 41 A. L. R. 665; 3 Thompson, Corporations (3d ed.) 557, sec. 1966.

Error is claimed by defendants relative to the reception in evidence of what is termed "employees' loans." Defendants contend that such transactions did not disclose any scheme or conspiracy to defraud investors; that the company, by foreclosure or otherwise, had become the owner of certain tracts of land, and, instead of executing notes and mortgages itself, had some of its employees execute them, guaranteeing such employees against loss, the company then taking a reconveyance of the title from such employees, assuming and agreeing to pay the mortgage indebtedness. This testimony showed that for a period of two years before and two years after the transaction at issue such loans were made to employees by the Lincoln Trust Company with the approval of the four defendants. Plaintiff was entitled to have these facts go to the jury as bearing on the question of intent, both of the trust company and of the four defendants. This question was covered in instruction No. 9 given by the court and states the correct rule relative to the admissibility of such evidence as follows:

"You are instructed that you are not to consider other loan transactions in which the defendants participated in determining whether the acts of the Lincoln Trust Company in placing the Given loan in the plaintiff's fund was a breach of trust, and you are not to consider such evidence upon the question as whether the defendants participated in placing the Given loan in the plaintiff's trust fund. The court instructs the jury, however, that fraud in the sale or conveyance of property is a fact that may be proved by showing the existence of other facts and circumstances surrounding or connected with the transaction to show fraudulent intent on the part of the parties to such sale or conveyance or tending to show a purpose not consistent with an honest intent. You are to consider

such other loan transactions only in arriving at the question of whether or not the Lincoln Trust Company by the placing of the Given loan in the plaintiff's trust fund intended to defraud the plaintiff and for the further purpose of determining whether the defendants, if they had knowledge of such other loan transactions, used due diligence to protect the plaintiff from any loss in its trust fund through the investment in the Given loan."

This action is one against the trustee for fraudulent breach of trust, making it necessary to prove intent; therefore, it was proper for evidence of employees' loans to go to the jury. *Shepard v. Hamaker,* 120 Neb. 166; *Sutton v. Kelliher,* 115 Ia. 632; 27 C. J. 807; 12 R. C. L. 669, sec. 175.

"The principle on which such evidence is received to show intent or state of mind is simply the principle which the human mind instinctively applies in ordinary affairs of life." 10 R. C. L. 938, sec. 105.

"When it becomes material to show the motive or intent which inspired an act, or the knowledge under which one has acted, it is relevant for such purpose, under certain limitations, to prove other similar acts which explain such motive or bring home to the party the knowledge sought to be proved." Jones, Evidence (2d ed.) sec. 142.

Defendants contend as error that it was an abuse of discretion because the court did not submit special findings to the jury which were pertinent to the issues. The submission of special interrogatories, when requested, is within the discretion of the court. *Huxoll v. Union P. R. Co.,* 99 Neb. 170. The refusal to submit special interrogatories, requested by defendants, was not an abuse of such discretion.

Defendants contend as error that the evidence fails to support the verdict, and in support of this contention declare that the only part Reichenbach, Holm and Mellor had in the Given loan was to sign the pink sheet approving the loan as a proper investment for funds of the Lincoln Trust Company, indicating that the question of

investing plaintiff's funds in the Given bonds was never presented to nor approved by the executive committee in writing, or otherwise; that the loan committee approved of a loan to Given for investment of company funds, but the latter committee had nothing to do with the investment of trust funds, and no one connected with the company except Schlytern and Hadley knew that the loan had been transferred to the trust department. Elinor Elder, plaintiff's witness, in response to question 671, "Does the loan committee, as a loan committee, have anything to do with determining trust investments, if you know?" answered, "To my knowledge they have nothing to do with determining investments as a trust investment." The witness Schlytern testified that Messrs. Reichenbach, Holm and Mellor had no knowledge that the funds of plaintiff were invested in the Given loan. Witness Harvey R. Given testified that the execution of the bonds in controversy was a *bona fide* transaction; that he was legally bound thereby and financially responsible, the owner of 640 acres of land in Holt county in fee simple; that the mortgage was intended to be and was a valid lien against said land; that his net worth was about $200,000 and that on the 5th day of December, 1928, $10,000 could have been collected from him. Further, that the testimony of Messrs. Reichenbach, Holm and Mellor shows that the question of investing the funds of plaintiff in the Given bonds was never presented to the executive committee; that the only committee which could have approved this or any other loan for trust fund investments was the executive committee; that it required the unanimous vote of all members of such committee to approve a loan. Witness Schlytern also testified that the list which included the Given loan was never reported to the executive committee.

Plaintiff, in order to establish its cause of action, must first produce evidence that the Lincoln Trust Company, as trustee, breached its trust, and, second, it must show by evidence that the defendants were legally responsible for the breach.

3 Pomeroy, Equity Jurisprudence (4th ed.) sec. 1071, sets forth the duty of a trustee in investing trust funds in the following language: "It is the trustee's duty to use diligence in investing the trust property so that it may produce as much income as possible, and also to use care and prudence in investing it in such securities as will render its loss highly improbable, even if not virtually impossible. * * * On the other hand, if he has made an investment in improper securities, contrary to the settled rules of equity on the subject, and the principal has been wholly or partially lost through insolvency or depreciation of value, or has failed to produce income, he will be held personally responsible for the loss or deficiency."

3 Pomeroy, Equity Jurisprudence (4th ed.) sec. 1079, in defining a breach of trust, states: "It is well settled that every violation by a trustee of a duty which equity lays upon him, whether wilful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust. The term therefore includes every omission or commission which violates in any manner either of the three great obligations already described—of carrying out the trust according to its terms, of care and diligence in protecting and investing the trust property, and of using perfect good faith."

The trustee in the instant case had been the owner of the farm in Holt county, known as the Hahn farm, which was encumbered with a mortgage supporting $12,500 worth of notes, for which the trust company was trustee for the holders thereof, and upon which the company paid the interest to the bondholders from its own pocket. When these notes became due March 17, 1928, the trustee paid the notes with plaintiff's money, placing the notes known as the Hahn notes in plaintiff's account on April 21, 1928. The question is whether or not this was a breach of trust. Under the trust agreement the trustee was to make a report to plaintiff as to its investment of plaintiff's money from January 1 to 20 of each year. Before this report was made, the Hahn notes being past due, the

Hahn land was transferred to Harvey R. Given; Given giving a mortgage on the land on December 5, 1928. The trustee replaced the original notes with the new notes made by Given, so that on paper the trustee held valid obligations. This was a question of fact as to the breach of trust to be presented to the jury. The trustee not only had the benefit of the mortgage, but required an assignment of all rents to the trustee and required a deed to be made by Given to it. These facts constitute the evidence upon which plaintiff relies to establish its claim of breach of trust.

The question then arises as to the responsibility of the four defendants herein. The evidence discloses that they were members of the board of directors and of the executive committee of the trust company, trustee, and charged with the powers and duties of their respective offices; that they were members of the loan committee which approved loans; that they employed and discharged the company's employees and owned a large amount of the capital stock of the company. From the record defendants took an active interest in dominating the affairs of the corporation.

Quoting in part from 26 R. C. L. 1321, sec. 182: "Every violation by a trustee of a duty which equity imposes on him, whether wilful and fraudulent or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust."

In *Duckett v. Mechanics Bank*, 86 Md. 400, 39 L. R. A. 84, it was held: "There can be no dispute that as a general principle all persons who knowingly participate or aid in committing a breach of trust are responsible for the money, and may be compelled to replace the fund which they have been instrumental in diverting. * * * There is in such instances no primary or secondary liability as respects the parties guilty of, or participating in, the breach of trust, because all are equally amenable."

The case of *Kavanaugh v. Commonwealth Trust Co.*, 223 N. Y. 103, resulted in the holding that, while members

of executive committees are held to a higher degree of care than directors, still directors not members of executive committees are nevertheless bound to use the same degree of care in attending to the trust company's affairs as an ordinarily prudent man would use in his own business, and that this care or lack of care creates an issue of fact for the jury to determine.

Quoting from 7 C. J. 885: "While directors of a trust company may delegate their work, they may not delegate their responsibility, and hence they are not excused from liability for losses suffered by the company because they committed their duties to an executive committee, relying on it to examine the loans and collateral. Members of an executive committee of a trust company are on their part bound to be on their guard to detect any irregularities or improvident acts on the part of the executive officers, and to scan critically the detailed reports which are made to them by such officers, and their diligence is therefore greater and the rule of their liability more strict than that of a director not a member of that committee."

Defendants claimed by their publicity "a record of sound, conservative management;" that the company's directors "were chosen because of their experience and ability;" that "the executive committee of the board of directors meets monthly, thus keeping in intimate touch with the affairs of the company;" that the officers "are ever watchful of the interests of the company's clientele." Individuals who are permitted by law to create trust companies to handle other peoples' money must use the same fidelity that one uses in his own business to see that the company does not defraud the public and does not divest beneficiaries of their trust funds.

The defense offered by defendants to the foregoing may be summarized as follows: That an officer of a corporation is not liable for an error of judgment or for a failure to perform the duty which the corporation owes third persons. This principle of law is not disputed by plaintiff. In view of the instructions given by the trial court, in

which it instructed as to the law relative to the liability of defendants, we believe that defendants were held not solely because of the Lincoln Trust Company's duty to plaintiff, but because they were the parties who caused the trust company to make the breach. The record presents a case for the jury to decide as between the evidence of plaintiff and the claims of defendants.

Defendants contend that testimony was improperly admitted on rebuttal. Mr. Peterson took the witness-stand and testified that the mortgage was a first lien on the Holt county land. Mr. Ricketts, trustee of the bankrupt company, testified in rebuttal to the amount of taxes paid by the Lincoln Trust Company out of its own money, amounting to $1,214.90, the amount of interest paid by the company on the Given loan amounting to $4,000, and that he, as trustee of the bankrupt company, was claiming $5,000 as prior to all liens. The court instructed the jury as follows: "You are further instructed by the court that the deed of conveyance from Harvey R. Given and Edith N. Given to the Lincoln Safe Deposit Company, which was acknowledged on February 15, 1929, recites that the grantee therein assumes and agrees to pay the $10,000 note and mortgage of which the plaintiff herein is now the holder. You are therefore instructed that no claim can be made by the Lincoln Safe Deposit Company or its owner, the Lincoln Trust Company, for moneys advanced to pay taxes, interest or other expenses as against the plaintiff. Whatever interest the Lincoln Trust Company or Lincoln Safe Deposit Company has in the property in dispute in this action is subject, junior and inferior to the lien of plaintiff." This instruction was given at the request of defendants, and if there was any error in the admissibility of this evidence on rebuttal it was cured by this instruction.

Defendants claim certain errors by the court in its instructions to the jury. They contend that instruction No. 1 does not fairly, properly and adequately state the issues to the jury. In reading this instruction and bearing in

mind that the issues as given to the jury are not to be considered by them as evidence upon which to base their verdict, but to inform them of the contentions of the respective parties to the action, we find that the court in said instruction stated the contentions of the respective parties, although not using the exact language of the pleadings, and by so doing conformed to the best practice. In considering an instruction stating averments of the pleadings, effect will be given to the whole, and if it sufficiently contains the substance of the pleadings, it is not erroneous. *Mosslander v. Armstrong,* 90 Neb. 774.

Defendants contend that instruction No. 25 is erroneous. It is as follows: "You are instructed that if you find from the evidence and the instructions given by the court that the Lincoln Trust Company was guilty of a breach of trust and that the defendants Carlsen, Reichenbach, Mellor and Holm, or any of them, are liable for that breach, you will then direct your attention to the question of damages. If you find from the evidence and the instructions of the court that because of the breach of trust the usefulness or value of the plaintiff's property has been seriously affected, you will find for the plaintiff and against the defendants or any of them and award the plaintiff damages in the sum of Ten Thousand Dollars ($10,000) with interest at seven per cent. from the 5th day of December, 1931."

There were other instructions given on the measure of damages. One for the defendants, instruction No. 24, is as follows: "The defendants claim that at the time of the transactions involved in this case the Hahn land was ample security for the Given bonds in which the plaintiff's funds were invested, and contend that the Given bonds constituted a first lien on the Hahn land and of a fair, reasonable and actual value of $10,000 and that therefore the plaintiff suffered no loss or damage by the investment in question. In this regard, if you find from the evidence and the facts before you that the bonds in question were of a fair and reasonable value of $10,000 when the deal

was made, then and in that case plaintiff would not have been damaged, and your verdict should be in favor of each and all of the defendants herein."

The court further instructed that, upon all questions of value of either the investment, the bonds to secure the same or the value of the land in question, the jury must consider the same as of the time of the making of the investment, December 12, 1928, and limited it to that particular time.

The contention of defendants on the measure of damages is to the effect that the jury had no alternative except either to find for the plaintiff in the sum of $10,000 or to find for the defendants, and that under such an instruction it would be impossible for the jury to return a reasonable verdict, it being their contention that if the bonds at the time they were given to plaintiff were worth less than $10,000, but had some value, then the differences between the two would be the proper measure of damages.

The trial court in instruction No. 25 adopted in part the language used in *McWilliams v. Excelsior Coal Co.,* 298 Fed. 886, relative to the usefulness or value of plaintiff's property being seriously affected, and we believe such instruction properly stated the measure of damages. There was no evidence that the bonds were worth less than $10,000, or any given value, the evidence being that the bonds were either worth the amount of the trust fund of $10,000 or nothing. Therefore, if the jury found that the usefulness or value of plaintiff's property had been seriously affected and further found there was a breach of trust on the part of defendants, then, without evidence to support the value of the bonds in a less amount than $10,000, the measure of damages contended for by defendants could not be considered. This in no way conflicts with the proposition of law as to the duty of a trustee not to invest funds in loans on real estate in excess of 40 per cent. of its appraised value. This question goes to the question of a breach of trust. We believe this contention on the part of defendants is erroneous and

that the rule is well settled that where a trustee wrongfully converts to his own use the trust property, or any part of it, the *cestui que trust* is entitled in equity to a personal decree for the value of the property so converted. Hill, Trustees (3d Am. ed.) *522; Perry, Trusts & Trustees (7th ed.) sec. 847.

The evidence on the part of plaintiff shows that on the date of the original fraudulent transfer the bonds were worthless. The evidence on part of defendants as to the value of the bonds as of said date was to the effect that they were worth $10,000. Instruction No. 24, heretofore set out, is in keeping with the request of defendants for instructions on this subject. The defendants contend the bonds were worth $10,000 and no less. The plaintiff declares them, by virtue of defendants' breach of trust, to be of no value and worthless by the very nature of the transaction. Under the evidence and theory of plaintiff and of the defendants the measure of damages as given in this case is proper. The fact that the rule developed from an equity case is of no consequence; it was the proper rule to apply in a law action.

Defendants allege error in the giving of instruction No. 19, which is as follows: "You are instructed that where a mortgagee takes title to the real estate from the mortgagor the question of a merger of the two estates depends upon the intention of the mortgagee, and if none is expressed, in the absence of circumstances indicating a contrary purpose, it will be presumed that the mortgagee intended to do that which would prove most advantageous to itself." This instruction raises the question of merger of title. While it is probable that the instruction was unnecessary, still, as an abstract proposition of law, it was correct and affords defendants no ground for a new trial. "It is not reversible error to give to the jury an unnecessary instruction, which is a correct statement of a proposition of law, unless the complaining party appears to have been prejudiced thereby." *Johnson v. Ish,* 90 Neb. 173. This instruction did not affect the substantial rights

of the defendants and they were not prejudiced by the giving of it.

We do not feel the objections to other instructions given by the court to be of sufficient importance to discuss, as the instructions, considered as a whole, fairly state the law as shown by the issues and evidence in this case.

Defendant Carlsen contends that the trial judge was disqualified to sit in this case by reason of the fact that he was a member of Masonic Lodge No. 54, which was one of the lodges interested in the plaintiff corporation, and that he paid dues therein, citing section 27-315, Comp. St. 1929, which is as follows: "A judge or justice is disqualified from acting as such in the county, district or supreme court in any case, wherein he is a party or interested," and further citing decisions of this court and courts of other states in support of his contention. The secretary of plaintiff made an affidavit for the record, setting forth that the Masonic lodges of Lincoln desired to build a temple and that plaintiff corporation was organized for that purpose; that Judge Broady was not a stockholder in the corporation; that the funds of the corporation were raised by contributions; that Judge Broady was not a contributor to that fund, and that, should a distribution be made of such funds, Judge Broady would get none of them, he not being a contributor thereto.

Judge Broady, in passing on this angle of the case, which is made a part of the record, stated that he had been a member of Lancaster Masonic Lodge No. 54 for something like 20 years; that he had in no way contributed to the fund of plaintiff in question, was not interested therein, did not personally profit or benefit therefrom, and that the question of his disqualification was not raised until almost at the end of the trial which consumed 11 days, and that his membership in said lodge did not influence him in the slightest degree in any ruling throughout the trial.

We believe the objection as raised is without merit and

that the defendant Carlsen has failed to show in any way that the trial judge was disqualified to hear the case and that the showing made came at a rather inopportune time.

For the reasons heretofore given in this opinion on the various assignments of errors contended for by the defendants, or either of them, we believe the judgment of the lower court should be and is hereby

AFFIRMED.

GOOD, J., dissents.