CAMPBELL, Acting Chief Judge.
This is an appeal and a cross-appeal from a final judgment following a trial without a jury, which found appellee/cross-appellant not liable in conversion, but liable in dam.ages for improper management of trust funds. The judgment assessed damages against appellee/cross-appellant in the amount of $39,969.08. We affirm on appeal and reverse on the cross-appeal.
Appellee was trustee under two trusts originally established by appellant Fort Myers Memorial Gardens, Inc., pursuant to section 559.441, Florida Statutes (1973) and section 559.41, Florida Statutes (1977), the predecessors to section 497.048 and 497.-021, Florida Statutes (1983).
Appellee served as trustee of the Fort Myers Memorial Gardens Future Maintenance Trust (“Perpetual Care Trust”) and the Fort Myers Memorial Gardens Merchandise Trust (“Merchandise Trust”) until February of 1982, at which time it was removed as trustee by the appellant cemetery pursuant to a power of removal reserved to the cemetery in each trust instrument.
During the period of administration of the trust, the Merchandise Trust incurred a loss on the investments in the amount of $39,969.08, resulting solely from the decline of the value of investments made by appellee of trust funds in the Income Common Trust Fund maintained by appellee. Investments of Perpetual Care Trust funds, in the same Income Common Trust Funds, resulted in a decline in value of $25,646.43. Most of the loss in both trust funds was in the form of paper loss until the date upon which appellee transferred its holdings to the appellant National Trust Company.
At the time of the transfer of funds, appellee liquidated the Income Common Trust Fund holdings of both the Perpetual Care and the Merchandise Trust and transferred all trust funds to the successor trustee, except for $18,000 which was withheld from each trust by appellee as “reserved for anticipated costs of litigation.” Appel-lee then filed its petition for final accounting in this action and the appellant cemetery counterclaimed raising various issues of law. Subsequently, the appellant National Trust Company intervened and% filed a claim against appellee alleging improper investments of the funds in the trust and conversion by appellee of the $18,000 reserve withheld by appellee from both trusts.
The bench trial was held in January 1984.
The trial court held that the appellant successor trustee could recover damages in the amount of $39,969.08 from appellee as a result of improper investment of the Merchandise Trust. The court also held that appellee was authorized by law to withhold the $18,000 amount from each trust, hold *1217 ing against the successor trustee on the issue of conversion. The lower court granted leave to amend the pleadings to add a count against appellee for negligent disinvestment from the Income Common Trust with regard to the Perpetual Care Trust, but denied the claim on its merits.
The court entered judgment in favor of the appellant National Trust Company, as successor trustee, for $39,969.08. The court ultimately awarded appellee costs and fees in the amount of $8,360.
Section 497.021, Florida Statutes (1983), and its predecessor section 559.41, Florida Statutes (1975), requires that every cemetery company must establish a trust fund for the future care and maintenance of the cemetery. The trustee must be a bank or a savings and loan association, though the cemetery company is given the right to appoint a person “to advise the trustee in the investment of the trust fund.” The future care and maintenance trust is the vehicle to insure that there will be funds (income from the trust) to maintain the cemetery ad infinitum.
Cemetery companies that sell personal property or services to be used in connection with the burial of human remains or the commemoration of the deceased are required by section 497.048, and its predecessor section 559.441, Florida Statutes (1977), to create a merchandise trust. Sufficient funds must be deposited in the merchandise trust to pay for the personal property (burial vaults, grave liners, urns, memorials, etc.), when death occurs at some point in the future. The merchandise trust is a vehicle to insure that the services and personal property contracted for in the future will be available when needed.
Since we affirm on appellant’s appeal and reverse on the cross-appeal, we find it profitable to discuss only the issue raised on the cross-appeal. That issue is whether the trial court erred in finding appellee liable in damages for the total amount of the decline in value of the funds of the Merchandise Trust resulting from appel-lee’s investment of those funds in an Income Common Trust Fund maintained by appellee. We hold that the trial court did err in holding appellee liable for the total decline in value.
The trust instrument creating the Merchandise Trust obligated the trustee to invest the trust funds in “certificates of deposits, government securities and bonds with AAA or AA ratings.” However, the trust instrument also gave the trustee the right to purchase any other investments authorized by law with the consent of the cemetery.
Appellee stated in its petition to settle final accounting that although the assets held in its Income Common Trust Fund did not meet the standards prescribed in the trust instrument, appellant had authorized the purchase of the Income Common Trust Fund units and, therefore, the investment was not in violation of the trust instrument. The trial court held that even assuming'that appellant had given such consent, the consent was not “informed” and would, therefore, not absolve appellee from liability. Appellee concedes for the purposes of this appeal there was a technical breach of the trust instrument that was not dissipated by informed consent.
However, the trial court’s damage figure is unjustified. When appellee was terminated as trustee, it was forced to liquidate the units of the Income Common Trust Fund which resulted in a loss. The loss on the sale of the units of the Income Common Trust Fund can be attributed to the influence of two factors: (1) the unique financial conditions of the period in question and; (2) the timing of the liquidation of the Income Common Trust Fund units. The trial court held that appellee was not responsible for the abnormal financial conditions. The trial court also refused to find appellee liable for the liquidation of the units of the Income Common Trust Fund. The trial court did determine appellee to be liable for the fact that approximately twelve percent of the Income Common Trust Fund assets were in investments not authorized by the trust instrument. However, the trial court noted that this improper investment in bonds having only an A *1218 rating, rather than AAA or AA ratings, did not cause the loss. Therefore, based on the trial court’s own findings, there appears to be no causal connection between the technical breach committed by appellee and the loss suffered.
The Income Common Trust Fund held $52,914 in assets as of March 1982. The majority of the holdings were government securities and bonds having AAA and AA ratings, which would qualify under the terms of the trust. Approximately twelve percent of the total assets were bonds carrying only an A rating, which would not qualify under the terms of the trust. All of the assets declined in value during ap-pellee’s trusteeship. The evidence, however, shows that the unqualified A rated bonds actually declined in value less than the qualified higher rated bonds. Therefore, appellee’s technical breach actually worked to the benefit of the Merchandise Trust, rather than to its detriment.
In finding that appellee was liable for the entire loss suffered by the Income Common Trust Fund, the trial court relied upon an erroneous construction of Restatement (Second) of Trusts § 212 comment e (1959). The trial court determined that a trustee cannot use the fact loss was not caused by its breach as a defense. It should be noted, however, that the Restatement comment relied upon states that although there are no cases holding that it is a defense that authorized investments would have fallen in value regardless of the technical breach, there are also no cases holding that this is not a legal defense.
We believe the better rule is established in cases that are factually similar to the one at issue. That rule is that the initial burden is for the beneficiary to show that a breach occurred that proximately caused an injury, and the burden then shifts to the trustee to demonstrate that the loss would have occurred even in the absence of the breach. Estate of Stetson, 463 Pa. 64, 345 A.2d 679 (1975). See also In Re Estate of Bartlett, 680 P.2d 369 (Okla.1984); In Re Estate of Gump, 128 Cal.App.3d 111, 180 Cal.Rptr. 219 (1982).
The trial court below concluded that the loss would have occurred even in the absence of appellee’s technical breach. Therefore, appellant did not carry its initial burden of showing that the injury was proximately caused by the technical breach. Alternatively, if it is construed that appellant did carry its initial burden, then appel-lee carried its counter-burden of showing that the loss would have occurred in the absence of the breach. Based upon that rule, the trial court should not have entered judgment against appellee for the loss by virtue of its factual finding that appellee’s technical breach did not cause the loss.
Additionally, assuming that the technical breach of purchasing A rated bonds would make appellee liable for the losses suffered on those bonds, the A rated bonds made up only twelve percent of the Income Common Trust Fund. There is no connection between the purchase of the A rated bonds and the losses suffered on the authorized higher rated bonds and the authorized government securities making up the remainder of the Income Common Trust Fund. Despite this fact, the trial court found appellee liable for the entire loss suffered by the Income Common Trust Fund. The most that could be attributed to the technical breach is approximately $4,000, caused by the loss of the A rated bonds. Therefore, there is no proximate relationship between appellee’s technical breach of the trust instrument and the damages of $39,969.08 assessed by the trial court.
Appellant argues that appellee has only been able to demonstrate to the trial court that the loss might have occurred or, at best, probably would have occurred, but that argument is at variance with the finding of fact made by the trial court. The trial court specifically found that the loss in this ease did not result from the breach of the trust. The trial court went on to hold that the loss suffered by the Merchandise Trust “would probably have been incurred in absence of breach of trust.” Thus, there appears to be some contradiction between the finding of the trial *1219 court that the loss did not result from the breach and its holding that the loss “would probably have been incurred in absence of breach of trust.” Thus, on remand, the trial court shall determine the specific amount of loss, if any, that directly flowed from the breach and assess only that amount, if any, as damages.
Affirmed on appeal: Reversed and remanded with instructions on cross-appeal.
SCHOONOVER and LEHAN, JJ., concur.