George A. SCHLOEGEL and the Hancock Bank Profit Sharing Plan, Plaintiffs,

v.

Laurie BOSWELL, Defendant,

v.

HANCOCK BANK, Charles Eastland, Martha Peterman and John Does 1 Through 10, Third Party Defendants.

Civ. A. No. S89–0330(R).

United States District Court, S.D. Mississippi, S.D.

July 3, 1991.

William V. Westbrook, III, White & Morse, Gulfport, Miss., for plaintiff Schloegel.

Carey J. Messina and Todd A. Rossi, Baton Rouge, La., for plaintiff Hancock Bank Profit–Sharing Plan and Third–Party defendants.

James O. Dukes and L. Christopher Breard, Gulfport, Miss., for defendant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on a Motion by the third-party defendants, Hancock Bank of Mississippi (hereinafter "Hancock Bank"), Charles Eastland (hereinafter "Eastland"), and Martha Peterman (hereinafter "Peterman"), to Dismiss the Third Party Complaint of the defendant, Laurie Boswell (hereinafter "Boswell") pursuant to Fed.R.Civ.P. 12(b)(6).

### Facts

The plaintiff, George A. Schloegel (hereinafter "Schloegel"), filed a complaint in this Court on May 9, 1989, alleging diversity jurisdiction and a federal question claim pursuant to the provisions of the Employee Retirement Income Security Act of of 1974, as amended, 29 U.S.C. 1001 et seq. (hereinafter "ERISA").

The complaint was amended in order to add the Hancock Bank Profit Sharing Plan (hereinafter "the Plan") as a party plaintiff.

The essential allegations of the complaint and amended complaint are as follows.

At all relevant times the plaintiff, Schloegel, was a resident of Harrison County, Mississippi. Mr. Schloegel has also been employed as an executive vice-president of Hancock Bank (hereinafter "Bank"), a Mississippi banking corporation.

The Hancock Bank Profit Sharing Plan (hereinafter "The Plan") is an employee benefit plan maintained by the Bank and Schloegel was a participant in the Plan. The Plan is a qualified "pension and profit sharing plan" within the meaning of 29 U.S.C. § 1002(2)(A).

At all relevant times the defendant, Boswell, a resident of the State of Louisiana, was licensed as an insurance agent by the State of Mississippi.

In 1977, in his capacity as a paid insurance consultant to the Bank, Boswell proposed to the plaintiff, Schloegel, that it would be beneficial for Schloegel to apply the accumulated balance of his profit sharing account under the Plan to purchase an ordinary life insurance policy. The policy, as recommended and selected by Boswell, was procured from New England Life Insurance Company on or about August 21, 1977, and remained in effect until 1980.

In 1980, Boswell recommended that the New England Life policy be replaced by an ordinary life policy issued by Massachusetts Mutual Life Insurance Company. The new policy was issued on December 17, 1980. This policy remained in full force and effect until 1987; with all premiums being paid out of the balance of Schloegel's profit sharing account as had been done under the previous policy.

The plaintiff alleges that at all time relevant to this action, the applicable federal income tax regulations were such that adverse tax consequences resulted from the purchases recommended by the defendant; however, the plaintiff did not become aware of these consequences until 1987.

The plaintiff further alleges that Boswell, as a reasonably prudent insurance consultant, specifically should have ascertained the aggregate amount of employer contributions allocated to Schloegel's profit sharing account so that the premiums for the amount of insurance purchased on the basis of Boswell's advice would not result in a loss.

In conclusion, the plaintiff alleges that Boswell's negligence, if any, led to the plaintiff's cancellation of the policy in order to avoid further loss and as a result that Schloegel's profit sharing account suffered a net loss of $43,453.00.

On September 20, 1990, the defendant, Boswell, filed his third-party complaint and counter-claim. The counter-claim is directed specifically to the Plan as counter-defendant.

By his third-party complaint and counter-claim, Boswell, in summary, charges that his liability, if any, is solely or partially due to the negligence and/or breach of fiduciary duty on the part of the third-party defendants and counter-defendant.

Mr. Boswell's prayer for relief is essentially for contribution or indemnification on behalf of himself personally and not the Plan.

## Discussion

As succinctly stated in the defendant's brief in opposition to the Motion to Dismiss, the issue is whether the courts will incorporate the contribution and indemnity principles of common law into the statutory scheme of ERISA.

By way of clarification, this Court notes that the defendant, Boswell, has throughout the course of this civil action denied any fiduciary status and any inference to the contrary shall be for the limited purpose of deciding the merits of this motion.

The defendant's argument in opposition to the subject motion states that while there are two distinct lines of cases which have addressed this issue, the controlling case is *Whitfield v. Lindemann*, 853 F.2d 1298 (5th Cir.1988). Due, however, to the cursory manner in which the issue is treated in *Whitfield* in contrast to the manner in which the United States Supreme Court and lower courts have struggled with the underlying problem of statutory construction, this Court is compelled to examined the issues more closely.

At the outset this Court would express its respect and appreciation to United States District Judge Leinenweber for the guidance afforded by that court's opinion in *Mutual Life Ins. Co. of New York v. Yampol*, 706 F.Supp. 596 (N.D.Ill.1989).

While recognizing that the civil enforcement section of ERISA, 29 U.S.C. § 1132(a), makes no provision for a right of contribution or indemnification by co-fiduci-aries, the underlying premise of the defendant's argument is "expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987).

Before proceeding farther with this premise, this Court would point out that it appears to have its genesis in the remarks of Sen. Javits as recorded in 120 Cong.Rec. 29933, 29942 (1974), part of which, as set out in *Pilot Life*, states that " '[i]t is also intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.' " *Id.* at 56, 107 S.Ct. at 1557.

The *Pilot Life* Court appears to have included Sen. Javit's remarks (as well as others) to buttress its argument against allowing varying state law to supplement or supplant what was intended to be primarily within the purview of federal legislation.

The defendant's next step is an attempt to find authority for incorporating the relevant principles of trust law into the statutory scheme of ERISA. The route chosen by Boswell is via *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), wherein it is set out:

ERISA abounds with the language and terminology of trust law. See, *e.g.*, 29 U.S.C. §§ 1002(7) ("participant"), 1002(8) ("beneficiary"), 1002(21)(A) ("fiduciary"), 1103(a) ("trustee"), 1104 ("fiduciary duties"). ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. §§ 1101–1114, 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.' H.R.Rep. No. 93–533, p. 11 (1973).

*Id.* at 110, 109 S.Ct. at 954.

Despite the Supreme Court's obvious adoption of the term "certain", which precludes an inference of all inclusiveness, the defendant, without authority, proceeds to use this language as a linchpin whereby the particular principles of contribution

and/or indemnity as found in the law of trust may be made a part of the federal common law.

Another problem with reliance upon *Bruch* for the defendant's purposes is the fact that the Court therein was not concerned with sweeping adoption of the principles of trust law nor was contribution or indemnification mentioned. As the court stated: "the discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations." *Id.* at 108, 109 S.Ct. at 953.

Notwithstanding this Court's lack of agreement with the defendant's argument, it nonetheless finds this to be an issue in need of unequivocal resolution and will expand on the analysis.

An excellent summary of the accepted process to be employed in attempting to solve the problem *sub judice* is found in *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) in which it is set forth:

In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction. See *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 [99 S.Ct. 2479, 2485, 61 L.Ed.2d 82]. The ultimate question in cases such as this is whether Congress intended to create the private remedy— for example, a right to contribution— that the plaintiff seeks to invoke. See *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16 [100 S.Ct. 242, 245, 62 L.Ed.2d 146]; [*Universities Research Assn., Inc. v. Coutu*, 450 U.S. 754 (1981)] at 770 [101 S.Ct. 1451, 1461, 67 L.Ed.2d 662]. Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies. See *Cort v. Ash*, [422 U.S. 66 (1975)] at 78 [95 S.Ct. 2080, 2087, 45 L.Ed.2d 26]; [*Cannon v. University of Chicago*, 441 U.S. 677 (1979)] at 689–709 [99 S.Ct. 1946, 1953–1964, 60 L.Ed.2d 560].

*Id.* 451 U.S. at 91, 101 S.Ct. at 1580.

Turning first to the language of the statute itself, specifically 29 U.S.C. § 1001(b), we find the following:

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

This Court's reading of section 1001(b) reveals no benefits for fiduciaries, only "standards of conduct, responsibility, and obligation."

As this action involves only civil remedies, this Court looks next at 29 U.S.C. § 1132(a) (§ 502(a) of ERISA) which provides in pertinent part:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

Proceeding to 29 U.S.C. § 1109(a) (§ 409(a) of ERISA) we find that:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

■ Clearly, the language of §§ 1132 and 1109, as set out above, is aimed at protecting the Plan and its participants or beneficiaries; however, the phrases "other appropriate equitable relief" and "other equitable or remedial relief" appear to open the door for the defendant's position if these phrases are read in isolation. It is, however, this Court's opinion that such equitable relief is intended to benefit only the Plan, the participants, and the beneficiaries.

■ The remaining section which might be thought to infer a right of contribution or indemnification by a fiduciary from a co-fiduciary is 29 U.S.C. § 1105(a) (§ 405 of ERISA) which provides:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

This Court's reading of § 1105(a) leads it to agree with the *Yampol, supra,* succinct analysis that:

This provision however merely creates joint and several liability among co-fiduciaries in certain circumstances and is silent on the issue of contribution. Moreover, the Supreme Court has rejected the equation of joint and several liability with a right of contribution. [*Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 646, 101 S.Ct. 2061, 2069, 68 L.Ed.2d 500 (1981)]

*Id.* at 598.

Turning now to the legislative history of ERISA as set out in 1974 U.S.Code Cong. and Admin.News, p. 4639, 4649–4650, this Court notes that with respect to the section on fiduciary responsibility, the authors of House Report No. 93–533 represent that "[t]he fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts." Without attempting to summarize the several reasons set forth, no where does this Court find the emphasis upon affording remedies for the benefit of the fiduciary.

This Court also observes that 1974 U.S. Code Cong. and Admin.News, p. 4639, 5080, of the House Conference Report No. 93–1280 in a subsection entitled *Liability for breach of co-fiduciary responsibility in general,* makes no mention of a right of contribution or indemnification.

The *Yampol* court, having found no support for a right of contribution, very cogently summarizes the significance of such absence of a particular remedy as follows:

ERISA's structure and underlying purpose are wholly consistent with the legislative history in this regard. 'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.' *NW Airlines,* 451 U.S. at 97, 101

S.Ct. at 1583–84. ERISA is clearly such a statute:

> "The six carefully integrated civil enforcement provisions found in § 502(a) [29 U.S.C. § 1132(a)] ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertant omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'"

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1724, 64 L.Ed.2d 354 (1980) (emphasis in original).

In *Russell* the Supreme Court was 'reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.' *Russell*, 473 U.S. at 147, 105 S.Ct. at 3093.

*Id.* at 598–599.

As with the *Yampol* court's holding, this Court also is reluctant to find a right of contribution or indemnification in the remedial scheme of ERISA.

As previously noted, the defendant maintains that this Circuit's recognition of a right of indemnity in *Whitfield v. Lindemann*, 853 F.2d 1298 (5th Cir.1988), is binding upon this Court.

This Court respectfully declines to follow the dicta in *Lindemann*, not because it was superfluous to the holding, but because it is this Court's opinion that upon re-examination of *Free v. Briody*, 732 F.2d 1331 (7th Cir.1984), which the *Lindemann* court cited, in light of *Russell*, the United States Court of Appeals for the Fifth Circuit would amend its position.

■ Once again this Court finds the opinion of the court in *Yampol* to be an articulation which would be difficult to improve upon and especially as that opinion contrasts pertinent holdings from *Free* and *Russell* the following is adopted, to-wit:

In *Free v. Briody* the court stated that ERISA allows a co-trustee who has been required to make good a loss to a plan to recoup his loss from his more culpable co-trustee in narrowly appropriate circumstances. 732 F.2d at 1337. The *Free* court found this right to relief in section 1109 of ERISA which provides that:

> "(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

The *Free* court determined that a co-trustee's right to indemnification was within the appropriate equitable relief which the 'catchall' remedy phrase at the end of section 1109 empowers courts to grant. *Id.*

This reading of section 1109 however was undercut by the Supreme Court's subsequent decision in *Russell*. In *Russell* the plaintiff, a pension plan beneficiary, sought to hold a fiduciary personally liable for extra-contractual compensatory or punitive damages caused by improper or untimely processing of benefit claims and claimed that section 1109 provided the basis for such a right of action. The *Russell* Court rejected this claim arguing that "to read directly from the opening clause of § 409(a) [29 U.S.C. § 1109(a)], which identifies the proscribed acts, to the 'catchall' remedy phrase at the end—skipping over the intervening language establishing remedies benefiting, in the first instance, solely the plan—would divorce the phrase being construed from its context and construct an entirely new class of relief available to entities other than the plan."

*Russell,* 473 U.S. at 141–42, 105 S.Ct. at 3090 (emphasis in original). The *Russell* Court concluded that "the entire test of § 409 [29 U.S.C. § 1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself." *Id.* 105 S.Ct. at 3091. *Russell* clearly implies then that a fiduciary's right to contribution cannot be found in section 1109 of ERISA.

*Id.* 706 F.Supp. at 599–600.

In conclusion, this Court, in declining to engraft upon ERISA the remedies of contribution and/or indemnification, finds further support in the United States Supreme Court's closing remarks in *Texas Industries, Inc. v. Radcliff Materials, Inc., supra,* 451 U.S. at 646–647, 101 S.Ct. at 2069–2070. The opinion of the unanimous Court delivered by Chief Justice Burger after an examination of the issue of right of contribution in the context of the Sherman and Clayton Anti–Trust Acts, with an eye toward legal, equitable and public policy considerations, set out the following:

> The policy questions presented by petitioner's claimed right to contribution are far-reaching. In declining to provide a right to contribution, we neither reject the validity of those arguments nor adopt the views of those opposing contribution. Rather, we recognize that, regardless of the merits of the conflicting arguments, this is a matter for Congress, not the courts, to resolve.
>
> The range of factors to be weighed in deciding whether a right to contribution should exist demonstrates the inappropriateness of judicial resolution of this complex issue. Ascertaining what is "fair" in this setting calls for inquiry into the entire spectrum of antitrust laws, or what form a right to contribution should take, cannot be resolved without going beyond the record of a single lawsuit. As in *Diamond v. Chakrabarty,* 447 U.S. 303, 317 [100 S.Ct. 2204, 2212, 65 L.Ed.2d 144] (1980):
>
> > "The choice we are urged to make is a matter of high policy for resolution within the legislative process after the kind of investigation, examination, and study that legislative bodies can pro-

vide and courts cannot. The process involves the balancing of competing values and interests, which in our democratic system is the business of elected representatives. Whatever their validity, the contentions now pressed on us should be addressed to the political branches of the Government, the Congress and the Executive, and not to the courts."

Accord, *United States v. Topco Associates,* 405 U.S. 596, 611–612, 92 S.Ct. 1126, 1135–1136, 31 L.Ed.2d 515 (1972).

IT IS THEREFORE this Court's holding that the third-party complaint and counterclaim of the defendant, Laurie Boswell, is dismissed.

SO ORDERED AND ADJUDGED.